RAMONA MUÑOZ DE ALONSO, Plaintiff and Appellee, *v.* SOCIEDAD AGRÍCOLA DE RÍO PIEDRAS, Defendant and Appellant.

No. 8304. Argued June 19, 1941.—Decided July 29, 1941.

*Monserrat, De la Haba & Monserrat* for appellant. *Celestino Iriarte, F. Fernández Cuyar,* and *H. González Blanes* for appellee.

M<small>R</small>. C<small>HIEF</small> J<small>USTICE</small> D<small>EL</small> T<small>ORO</small> delivered the opinion of the court.

This is a proceeding for a declaratory judgment. Between the plaintiff and the defendant there arose a disagreement as to the interpretation to be given to a clause of a contract into which they had entered, and the plaintiff instituted a proceeding under Act No. 47 of 1931 (Sess. Laws, p. 378), relative to declaratory judgments and decrees and making legislation on the subject uniform, one of whose provisions—the one contained in its section 12—reads thus:

"Section 12.—Because of its nature, this Act is a law of remedies, its purpose being to authorize the determination of rights, statutes and other judicial relations and to allow remedies against doubt or uncertainty of such rights, statuses and other judicial relations; and it shall be liberally construed and applied."

On February 26, 1938, the plaintiff by a public deed leased to Sindicato Reorganización Vannina, of which the defendant is successor in interest, two rural properties located in Río Piedras—one of 165 acres (*cuerdas*) and another of 121 acres—the former for a term of ten years, one month, and twenty days, and the latter for a term of ten years and twenty days counted from May 10 and June 10, 1937, respectively, it being agreed to make the contract effective as from those dates.

The lease rental was fixed at $1,725 per year on the property of 165 acres, and at $1,275 per year on that of 121 acres; and it was further agreed that—

"The rental hereinabove stated or fixed for those properties shall continue thus so long as the present quota system is maintained, it

being agreed that as soon as the quota system now in force in Puerto Rico should cease, *or a quota not below the amount of sugar produced in Puerto Rico, before the restriction became effective, should be fixed, the lease rental shall be raised to three thousand six hundred dollars on both parcels,* from. the date on which the above-mentioned quota system shall have ceased or an increase in the manner above set forth shall have been authorized." (Italics ours.)

Such is the clause whose application in practice gave rise to the difference of opinion leading the plaintiff to resort to the court, which interpreted the same as follows:

". . . The phrase 'before the restriction became effective' can only refer to the sugar production in Puerto Rico when no restriction existed.

"The adverb 'before' denotes priority or preference, priority of time or place, and that being so it can not be interpreted to mean the precise moment at which an event takes place. When we say 'day before yesterday,' it is neither yesterday nor today. So that when the parties stipulated that the agreed rental would be raised to $3,600 as soon as there should be fixed a quota not below the amount of sugar produced in Puerto Rico before the restriction became effective can not refer to the amount produced at the precise moment when the restriction went into effect, but to the amount produced prior to the time when the restriction was applied."

As from the evidence and from the admissions of the defendant it appeared, in its judgment, that "the quota system became effective on January 1, 1934; that the sugar production during the year preceding the establishment of said system (1933) amounted to 816,337 tons; and that the quotas fixed for the years 1938, 1939, and 1940 allowed a greater production of sugar than the one pertaining to the year 1933," it held that "the plaintiff is entitled to receive a yearly rental of $3,600, since the production allowed by virtue of the quota fixed for the years in which the contract was in force had been greater than the sugar production prior to the establishment of said system in Puerto Rico."

Feeling aggrieved by that decision, the defendant took the present appeal. It urges that the interpretation given by the court is contrary to what was actually agreed, and in support of its contention it argues in part thus:

". . . The lower court should have investigated as to how far the seemingly clear sense of all the words used in the drafting of said clause agrees with the intention of the contracting parties, . . .

"Did the lower court per chance ask itself what was the practical purpose of that clause? Did it take into account the fact that said contract was made in the year 1938, when the quota system had already been established, when the production preceding such establishment was already exactly known. If the parties knew that the production for the year 1933 was below the quota fixed for the year 1938, when the contract was made, what was the need, the object, or the practical purpose of the fourth clause of the contract? How is it possible that, two years after the contract was made during which time the parties interpreted their intention and will, there should be now maintained that such was not the intention of the parties? Has this not been the authentic interpretation of said contract? We can not admit that the will and intention of the parties was to establish a condition which would not produce any practical or legal effect whatsoever. If such was the case, would it not have been more logical to stipulate once and for all that the lease rental would be $300 monthly?"

The problem is not easily solved. If the clause is interpreted in accordance with its express terms, no other conclusion is possible than the one reached by the trial court. "Before" can only refer to the sugar production when no restriction existed.

However, such an interpretation leaves in the mind of the judge at least some doubt as to whether that could have been the intention of the contracting parties, since it is equivalent to the conclusion that the agreed stipulation lacked any reason for its existence.

If at the time the contract was made a quota greater than the sugar production for the year preceding the restriction, that is, the establishment of the quota system, had already

been fixed, why refer to a future event which in fact had already occurred?

For the purpose of vitalizing the clause it occurred to us that perhaps the same might be interpreted in the sense of taking as a basis, not the production for the year immediately preceding, but the average production for the years 1931, 1932 and 1933, which, according to the General Regulations for the Sugar Quota, prescribed by the Secretary of Agriculture under the Agricultural Adjustment Act, were taken into account in fixing the quota when the system first became effective; but nothing would be gained thereby because said average production would always turn out to be lower than the quotas at the time of the contract.

In order that the theory of the defendant-appellant could prevail, it would have to be admitted that "before the restriction became effective," means "at the moment when the same was made effective"—letter to the plaintiff, page 30 of the transcript—giving to the term "moment" the meaning of "year," that is, the year 1934, in which the production was greater than the quota for 1938; or the year 1933 would have to be discarded and the year 1932 accepted, in which the production amounted to 992,432 tons, which is also greater than the aforesaid quota.

That interpretation would be contrary to the letter of the contract, and apart from the fact that by interpreting the latter according to its express terms the clause would have no object, which is contrary to the logic of the dealings between men, we fail to find anything in the evidence introduced which would show that the intention of the contracting parties was the one alleged by the appellant. And that being so, it is not possible to uphold such a contention.

Regarding the interpretation which is claimed to have been given to the contract by the parties themselves, and the alleged knowledge which both of them had of the sugar situation before and after the quota regíme, it will suffice to

say that it does not appear from the record that that alleged knowledge was complete in so far as the plaintiff is concerned, and it may be concluded that if she at first accepted as rent a lesser amount than she was entitled to, she did so because she was not familiar with the situation. Her acts in that connection do not therefore constitute an authentic and deliberate interpretation in the sense that what she originally accepted was what had been really agreed.

Such being the attendant circumstances, the doubts remain; but in the absence of clear facts which would enable us to conclude that the true intention of the parties, disregarding the literal meaning of the terms of the contract, is the one maintained by the appellant, we must uphold such literal meaning.

The appeal must be overruled and the judgment appealed from affirmed.